UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| MELISA H. BYRD, as Administratrix )<br>of the Estate of Jack Ronald Holton, )<br>Sr. and of the Estate of Edna Grace )<br>Sconyers Holton, and as surviving )<br>child of Jack Ronald Holton, Sr. and )<br>Edna Grace Sconyers Holton, and )<br>JACK RONALD HOLTON, JR., )<br>ANTHONY DOUGLAS HOLTON, )<br>and STEVEN TODD HOLTON, the )<br>surviving children of Jack Ronald )<br>Holton, Sr. and Edna Grace Sconyers )<br>Holton, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>WAL-MART TRANSPORTATION, )<br>LLC, and THE INSURANCE )<br>COMPANY OF THE STATE OF )<br>PENNSYLVANIA, )<br>)<br>    Defendants. ) | Case No. CV609-014 |

## **ORDER**

This diversity action arose from a fatal automobile accident involving one of defendant Wal-Mart Transportation's ("Wal-Mart") tractor-trailer rigs, which collided with a minivan, killing its passengers. Due to the severity of the accident, in-house Wal-Mart lawyers "immediately" became

involved in the case, and local counsel -- "engaged to assist in anticipation of possible litigation" -- arrived at the accident scene within hours of the collision. (Doc. 27 at 4.) Two months later, litigation ensued.

Presently before the Court are plaintiffs' motion to compel and Wal-Mart's motion for a protective order, both of which stem from a dispute that arose during Wal-Mart's corporate deposition.[1] (Docs. 26 (Motion to Compel) & 28 (Motion for Protective Order).) The dispute pertains to plaintiffs' exploration of Wal-Mart's post-accident investigation. Wal-Mart directs its safety personnel to investigate serious accidents involving a Wal-Mart vehicle. (Doc. 26 at 15; doc. 27 at 4.) After any such accident, documents and photographs are gathered and forwarded to Wal-Mart's Serious Accident Review ("SAR") committee, which then issues an opinion finding that the accident was either "preventable" or "non-preventable." (Doc. 26 at 15; doc. 27 at 5-6.) During the deposition, plaintiffs' counsel

---

[1] Plaintiffs raise an additional issue, seeking production of a post-accident statement by the Wal-Mart driver. (Doc. 26 at 16.) Wal-Mart has represented that no such statement exists. In any event, plaintiffs did not attach "a certification that [they have] in good faith conferred or attempted to confer with [Wal-Mart for its] failure to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); L.R. 26.5. While it is clear that counsel for both parties made a good faith effort to resolve the discovery disputes discussed at the deposition (doc. 28 at 2), there is no record of any pre-motion effort at resolving the other matters raised in the motion to compel — i.e., Wal-Mart's alleged failure to produce the witness statement. (Doc. 26 at

2

explored the SAR committee's finding:

> Q Is it Wal-Mart's position that the wreck involving Mr. Braswell [the truck driver] and Mr. and Mrs. Holton was not preventable?
>
> A At this time, that is Wal-Mart's position. Discovery is still ongoing, though.
>
> Q Has Wal-Mart ever determined that the motor vehicle accident, the wreck, was preventable?
>
> A No, they have not.

(Doc. 26-3 at 23.) Wal-Mart's deponent went on to explain that "non-preventable" means that their investigation showed that their driver "was operating his vehicle in a safe manner, at a safe speed, maintaining his lane of travel, and could not have avoided the collision." (*Id.* at 24.) According to Wal-Mart, plaintiffs' counsel intruded into an impermissible area with his next line of questioning. Rather than inquiring into the facts uncovered during the investigation or further investigating the precise criteria used in determining whether an accident is "non-preventable," he asked whether "Wal-Mart [had] ever attributed any *fault* to [its driver] for the wreck." (*Id.* (emphasis added).) Wal-Mart's counsel thus promptly instructed the deponent not to answer that question, asserting that the plaintiffs had

---

16.) The Court therefore will not address this matter.

crossed the line by asking for a legal conclusion presumptively reached by Wal-Mart's attorneys in preparation for litigation rather than discoverable information related to the accident investigation. (*Id.* at 24-30.) Thereafter, the deposition was adjourned.

Plaintiffs move to compel an answer to the fault-attribution question. (Doc. 26.) The Court denies the motion. Wal-Mart's counsel correctly concluded that the information plaintiffs sought was protected by the work product immunity, which shields certain trial preparation materials, mental impressions, and legal theories of defendant's agents and attorneys from discovery. *Hickman v. Taylor*, 329 U.S. 495 (1947). The work product immunity doctrine, first established in *Hickman*, was eventually codified in Fed. R. Civ. P. 26(b)(3)(A), which limits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *Id.* While Rule 26(b)(3)(A) addresses only "documents and tangible things," courts have generally recognized that questions seeking mental impressions and legal theories would still be impermissible. *Lott v. Seaboard Sys. R.R., Inc.*, 109 F.R.D. 554, 558 (S.D. Ga. 1985) (citing *Ford v. Philips Elec. Instruments Co.*, 82 F.R.D. 359, 360 (E.D. Pa. 1979)); *Bray & Gillespie Mgmt. LLC v. Lexington*

*Ins. Co.*, 2008 WL 5054695 at *3 (M.D. Fla. Nov. 17, 2008) (unpublished) ("[t]he work product doctrine also protects oral expressions of an attorney's mental impressions, legal theories and subjective evaluations").

Mental impressions and legal theories enjoy near absolute immunity from discovery when they arise in anticipation of litigation. *Bray*, 2008 WL 5054695 at *3; *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 174 F.R.D. 506, 508 (M.D. Ga. 1997). Here, plaintiffs' question did not seek unprotected *facts*. Instead, it invited the deponent to testify as to mental impressions of Wal-Mart's agents and counsel.[2] After all, "fault" is defined at civil law as "[t]he intentional or negligent failure to maintain some standard of conduct when that failure results in harm to another person." BLACK'S LAW DICTIONARY 641 (8th ed. 2004). It is invested with strong legal implications, and is, in fact, a legal conclusion on one of the ultimate issues of the case. Any subjective evaluation by Wal-Mart of its *legal* responsibility for the accident (i.e., its failure to maintain some legally mandated standard of conduct) necessarily steps into mental impressions of the merits of the

---

[2] Presumably the 30(b)(6) deponent was privy to counsel's deliberations, so such questioning would necessarily implicate counsel's mental impressions.

5

case.³

Plaintiffs suggest, however, that even if the fault determination involved mental impressions or legal conclusions, it nevertheless was prepared in the "ordinary course of business" and not in anticipation of litigation. (Doc. 26 at 17.) Thus, they argue that the work product doctrine offers no protection. (*Id.*) The Court is not persuaded. The accident involved fatalities, prompting the near instantaneous involvement of a legal defense team, clearly in preparation for future litigation. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 (2008) ("Thus the test should be whether, in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."). While Wal-Mart apparently concedes that its SAR committee assessment was prepared in the ordinary course of business and thus enjoys no special work product protection, the Court is satisfied

---

³ Legal conclusions, for that matter, are not admissible at trial -- they are not binding on a party and thus waste trial time. *See, e.g., R & B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 786-87 (8th Cir. 2001). Nor can they fairly be said to lead to the discovery of admissible evidence (instead, adversaries can and should use discovery to probe for facts supporting claims and defenses; discovery responses concerning such facts can then lead to the discovery of other relevant facts, evidence, etc.).

that plaintiffs' line of questioning as to fault impermissibly sought -- through the 30(b)(6) deponent's reasonably expected answers -- protected mental impressions prepared in anticipation of litigation.[4]

In plaintiffs' motion to compel, they also contend that Wal-Mart improperly shielded "its witness from testifying about its post-wreck policies and procedures, and whether those policies were followed or not." (Doc. 26 at 14-15.) In fact the deposition transcript shows the opposite. Wal-Mart repeatedly emphasized that its accident review, "post-wreck policies and procedures," and data and information derived therefrom *were* discoverable:

> PLAINTIFFS[5]: Let me ask you a question: Are you going to prevent this witness from testifying about Wal-Mart's investigation of this accident postaccident? You can't investigate it before.
>
> WAL-MART: To the extent the investigation was conducted for purposes of the review --
>
> PLAINTIFFS: What review?

---

[4] Moreover, plaintiffs have not shown any substantial need for such discovery. *Briggs*, 174 F.R.D. at 509 ("If it is determined that the material sought by a party is protected by the work product doctrine, a moving party may nevertheless compel production only when (a) a substantial need for the information exists and (b) it would cause undue hardship to obtain the substantial equivalent of the material by other means.").

[5] The Court has substituted "PLAINTIFFS" and "WAL-MART" in place of the names of the parties' attorneys.

7

WAL-MART: -- serious accident review, he can testify, but with respect to any investigation by counsel or others at -- under the direction of counsel, he will not testify.

To the extent that he is asked questions about legal conclusions or legal analysis involving him or anyone else at Wal-Mart as part of the control group needed to be involved in the defense of this case, he will not testify. And he's previously testified in his last deposition as to the preventability finding. I'll allow him to go ahead and explain that opinion, if you want to get it, for a corporate representative.

PLAINTIFFS: My question is very --

WAL-MART: Hold on. I'll tell you what he's not going to testify to. He's not going to testify as to any hypothetical questions about subsequent review or possible reconsideration or reopening or anything along the lines of anything postlawsuit, how Wal-Mart feels about the lawsuit or has it reached any alternative conclusions or anything like that. That's not discoverable.

PLAINTIFFS: And why isn't it discoverable?

WAL-MART: Well, it's legal analysis. It involves mental impressions of counsel and conversations with representatives of the client. . . .

PLANTIFFS: Are you going to allow this witness to testify as to whether or not Wal-Mart complied with its own policies and procedures postwreck and the conclusions reached, or does that fall --

WAL-MART: With respect to the accident review committee, its activity postwreck, he can testify as to the

> procedures and conclusions reached. With respect to any hypotheticals involving analysis in response to this lawsuit or even, for that matter, in response to a demand for counsel within days of the accident for the preservation of evidence, he can talk about what he did to gather the information, what he's done to produce documents, that's fair game, but I think any analysis of the accident or fault or liability or any of those types of legal conclusions, he'll not testify to, and I explained that to you previously. . . .

(*Id.* at 27-30 (footnotes added).) Counsels' back-and-forth suggests that Wal-Mart was willing to provide factual information, including information that was discovered during its accident review, but properly instructed its deponent not to answer on the issue of any legal fault assessment. Moreover, plaintiffs' characterization of the instruction to the Fed. R. Civ. P. 30(b)(6) deponent as preventing them from discovering *factual* information as to Wal-Mart's policies and procedures and post-accident review is simply wrong.

Wal-Mart has since added another wrinkle. It asserts in its motion for protective order that it should not be required to permit hypothetical questions of its witness related to the SAR committee's *preventability* assessment (as opposed to any *fault* assessment). (Doc. 29 at 2.) It argues that such questions would invite responses that were impermissibly

speculative and would require its deponent to generally assess other witnesses' testimony (e.g., whether the deponent found someone to be credible or not). (*Id.* at 4.) If the SAR committee applies a uniform methodology in making preventability assessments, that information (the how and why of its methodology) should be discoverable. Hypothetical questions, in contrast, are never appropriate. Among other things, they invite virtually limitless deposition questioning best put to expert witnesses opining on matters like causation. Similarly, asking the 30(b)(6) deponent to assess another witness's testimony is impermissible; the witness is designated to depose on facts the corporation knows, not to comment on the veracity of another (a matter not relevant nor likely to lead to the discovery of admissible evidence, and in fact properly left to the jury).[6]

---

[6] Wal-Mart also contends that answers to such questions would necessarily result in the disclosure of information protected by the attorney-client privilege. (Doc. 29 at 4.) State privilege law applies in this diversity case. Fed. R. Evid. 501 ("with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law"). Applying Georgia privilege law, the Court in not persuaded that the attorney-client privilege applies here. Plaintiffs have not explicitly sought production of any information exchanged during any specific protected communication. *E.g., S. Guar. Ins. Co. v. Ash*, 192 Ga. App. 24, 25 (1989) (under Georgia law, the attorney-client privilege prohibits the use of "communications protected by the privilege") (quotes and cite omitted); *see also Lott*, 109 F.R.D. at 556 (same rule applies at federal common law).

For all of the reasons explained above, plaintiffs' motion to compel and motion for hearing (doc. 26) is **DENIED**. Defendant Wal-Mart Transportation's motion for protective order (doc. 28) is **GRANTED** as follows: (1) plaintiffs shall not question Wal-Mart's deponent on the issue of whether it ever attributed fault to its driver; (2) plaintiffs shall not posit the functional equivalent of "contention interrogatories" during the deposition, since Fed. R. Civ. P. 33 supplies the better mechanism for that;[7] and (3)

---

[7] "The purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position.' *Baltimore Therapeutic Equip. v. Loredan*, 1993 WL 129781 and *16 (E.D.Cal. 1993)." *CIBA Vision Corp. v. Bausch & Lomb, Inc.*, 2003 WL 25774307 at * 3 (N.D.Ga. Dec. 22, 2003) (unpublished). "Rule 33(c) [now subsumed under Rule 33(a)(2)] of the Federal Rules of Civil Procedure provides that an 'interrogatory is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact.' Fed.R.Civ.P. 33(c)." *Automed Technologies v. Knapp Logistics & Automation, Inc.*, 382 F.Supp.2d 1368, 1370 (N.D.Ga. 2005). While "contention questions" are not *per se* impermissible during a Rule 30(b)(6) deposition, courts restrict them to written interrogatories where it is more efficient to do so, and asking a lay 30(b)(6) witness to undertake on-the-spot legal analysis in order to respond to contention questions is asking too much, especially since the company's lawyer is far better equipped to formulate full and complete responses for his client to sign. *See, e.g., First Internet Bank of Indiana v. Lawyers Title Ins. Co.*, 2009 WL 2092782 at * 4 n. 5 (S.D. Ind. July 13, 2009) (unpublished) ("In this case it appears that First Internet's Rule 30(b)(6) deposition was a perfectly good mechanism for finding out factual matters known to the company, but for learning legal theories and contentions, it is not a fair substitute for asking interrogatories or using other mechanisms that give counsel an opportunity to ensure that the answers fairly lay out the legal and factual support for the claims or defenses."); *Exxon Research and Engineering Co. v. United States*, 44 Fed. Cl. 597, 602 (Aug 27, 1999) (contention interrogatories, rather than deposition of corporate designee, would be employed to conduct discovery with respect to claim construction issues in patent infringement case, considering that interrogatories would cost less money than deposition, and would avoid

plaintiffs shall not ask hypothetical and credibility-assessment questions of fact witnesses. Finally, the Court declines to award attorneys fees or costs to either party, as there is no evidence of unreasonable, obstructive, or obstinate conduct here.

**SO ORDERED** this  23rd  day of September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**

---

problem of requiring patent holder to designate one or more persons to explain how it believed its patents should be construed and how it believed its patents were infringed).