UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MELISA H. BYRD, as Administratrix of the Estate of Jack Ronald Holton, Sr., and of the Estate of Edna Grace Sconyers Holton, and as a surviving child of Jack Ronald Holton, Sr., and Edna Grace Sconyers Holton, and JACK RONALD HOLTON, JR., ANTHONY DOUGLAS HOLTON, and STEVEN TODD HOLTON, the surviving children of Jack Ronald Holton, Sr., and Edna Grace Sconyers Holton,

Plaintiffs,

v.                609CV014

WAL-MART TRANSPORTATION, LLC, and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Defendants.

## ORDER

## I. INTRODUCTION

This lawsuit arises from a fatal intersection collision in early 2009 involving a tractor-trailer driven by a Wal-Mart Transportation ("Wal-Mart") employee and a passenger van occupied by the Plaintiffs' deceased parents, Grace Sconyers Holton and Jack Ronald Holton (collectively, the "Holtons"). Doc. # 38 at 2. Plaintiffs seek damages for the wrongful deaths of their parents, doc. # 1 ¶ 25-28, and Plaintiff Melissa Byrd, as administratrix of her parents' estates, additionally brings a survival claim for damages for the pain and suffering, funeral expenses, burial expenses, and medical and other actual expenses caused by Defendants' negligence, doc. # 1 ¶ 20-24. Defendants move this Court for summary judgment with respect to Plaintiff Byrd's claims for the Holtons' conscious pain and suffering. Doc. # 36.

## II. BACKGROUND

On 1/16/09, the Holtons were traveling north on Georgia Highway 58 in Emanuel County, Georgia in a minivan driven by Grace Holton. Doc. # 1 ¶ 6. The Holtons' vehicle stopped at a red light at the intersection of Highway 58 and the U.S. Highway 1 bypass. *Id.* After the traffic signal turned green,[1] the Holtons entered the intersection. *Id.* Soon after, a tractor-trailer owned by Wal-Mart, which was traveling south on the bypass, entered the intersection and struck the Holtons' vehicle. *Id.* ¶ 7.

Emanuel County EMS arrived on the scene approximately six minutes after being notified of the collision. Doc. # 44 at 2. A paramedic "immediately went to the Holtons' vehicle and noted that Grace Holton's body was sitting in the passenger seat,[2] and Jack Holton was facing the rear of the vehicle in what appeared to be an embrace of his wife." *Id.* The paramedic then checked for a pulse on Jack Holton. *Id.* Believing that she felt a faint pulse, the paramedic opened the door to remove Jack Holton from the vehicle. *Id.* The paramedic then rechecked for a pulse but found that it was no longer there. *Id.* at 3.

The Holtons' bodies were transferred to the Georgia Bureau of Investigation's (GBI) lab for autopsies. *Id.* Steven Atkinson, M.D., a forensic pathologist employed by the GBI, performed the autopsies. *Id.* Based upon his examination of Grace Holton's body, Dr. Atkinson concluded that her death was virtually instantaneous (within fractions of a

---

[1] Although the parties dispute whether the Holtons' traffic light was green when their vehicle entered the intersection, the Court views the evidence and all reasonable inferences in the light most favorable to the the nonmoving party (here, the Plaintiff). *See Martin v. Brevard County Pub. Sch.,* 543 F.3d 1261, 1265 (11th Cir. 2008).

[2] Grace Holton was knocked from the driver seat into the passenger seat by the force of the impact. Doc. # 44-4 at 3.

second of the impact). Doc. # 46 at 12. Dr. Atkinson deemed the cause of Jack Holton's death to be "blunt force trauma of head, neck, torso, and extremities," with his most "immediate cause of death attributed to injuries sustained to his torso, causing his chest cavity to fill with blood before death." *Id.* at 3-4.

Plaintiffs collectively claim that Wal-Mart's driver was negligent by (1) failing to exercise due care; (2) failing to obey the traffic control device at the intersection of Georgia Highway 58 and U.S. Highway 1; (3) failing to maintain a vigilant lookout ahead; (4) traveling too fast for conditions; and (5) being otherwise negligent and careless in the operation of the Wal-Mart tractor trailer. Doc. # 1 ¶ 15. Plaintiff argues that this negligence caused "Mr. and Mrs. Holton to endure [conscious] pain and suffering, a loss of income, medical and funeral expenses, as well as the loss of enjoyment of their lives." *Id.* ¶ 9.

Defendants move this Court for summary judgment pursuant to F.R.Civ.P. 56 with respect to Plaintiff Melissa Byrd's claims on behalf of the Holtons' estates for their conscious pain and suffering. Doc. # 36. Defendants support this motion with a motion *in limine* to exclude the trial testimony of Dr. Atkinson on the issue of conscious pain and suffering. Doc. # 37. Because Defendants' motion *in limine* relates to some of the material facts disputed by the parties, the Court will address that motion first.

### III. MOTION *IN LIMINE*

Defendants have moved *in limine* to exclude the trial testimony of Dr. Atkinson on the ground that he does not offer reliable expert opinion testimony. Doc. # 37 at 1. Defendants thus challenge the opinion of Plaintiff's proffered expert as lacking a reliable foundation for admission under the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Federal Rule of Evidence 702 lays the foundation for the Court's *Daubert* analysis: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* requires the Court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. 509 U.S. at 589 n.7, 597. As a gatekeeper, the Court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593-94. The proposed testimony must derive from the scientific method; good grounds and appropriate validation must support it. *Id.* at 590. The *Daubert* Court listed four noninclusive factors for courts to consider in determining reliability under F.R.Evid. 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community. *Id.* at 593-94.

Defendants contend that Dr. Atkinson, a pathologist, is not qualified to offer an expert opinion on the issue of conscious pain and suffering, an issue Defendants urge is better left to a neurologist. Doc. # 37 at 1. Dr. Atkinson is "trained in the anatomic and clinical pathology, specifically with subspecialty training in forensic pathology." Doc. # 46 at 6. Dr. Atkinson is not a neurologist and acknowledges that he has no

2

expertise in the field of determining when or whether someone is conscious. *Id.* at 19-20. Defendants assert that, despite his lack of qualifications to testify on the issue of consciousness, Dr. Atkinson nonetheless offers his opinion on that matter. Doc. # 38 at 11.

While the Court agrees that Dr. Atkinson is not qualified to testify on the issue of Jack Holton's consciousness, the Court emphasizes that Dr. Atkinson himself never actually purports to do so. The Court has carefully reviewed the transcript of Dr. Atkinson's deposition and has not found a single instance where Dr. Atkinson opines on Jack Holton's state of consciousness post-impact and pre-death.[3] Rather, Dr. Atkinson provides his opinion only as it relates to the neurological injuries (or lack thereof) sustained by Jack Holton, which he *suggests* would not preclude consciousness or voluntary movement. *See, e.g.*, doc. # 46 at 32 ("Mr. Holton could have survived for seconds to minutes after the collision."); *id.* at 34 ("I saw no injuries of the cerebral hemisphere that would interfere with consciousness." "I do not see any injuries that would prevent movement after the accident."). Toward the end of the deposition, an exchange between defense counsel and Dr. Atkinson makes amply clear that he offered no opinion on Jack Holton's state of consciousness:

> Q: Within your field of pathology, based on the training, expertise that you have and the work that you did in the autopsy of Mr. Holton, in fact, you do not know whether Mr. Holton was conscious after the collision for any length of time, correct?
> A: Correct.

---

[3] Although at one point during the deposition, Dr. Atkinson suggests that Jack Holton "would have known what would have happened to him after the impact." Dr. Atkinson, however, immediately corrected himself by stating that "[t]here was nothing at autopsy that we see that would have prevented him from that."

> Q: But hypothetically, even if Mr. Holton did move after the crash, it's also possible that such a movement was unconscious?
> A: Correct.
> Q: But again, you're not able based on the information that you have gathered to testify that Mr. Holton was conscious for any period of time after the collision, correct?
> A: I saw no neurological injuries that would prevent consciousness at autopsy. Your statement is correct.
> Q: And you have no affirmative evidence from your autopsy report that, in fact, he was consciously aware of the events after the collision, correct?
> A: Based on the autopsy I don't know if he was conscious prior to the collision.
> Q: Thank you. And one last question. You equally do not know if he was conscious and aware of his surroundings after the collision, correct?
> A: That is correct.

*Id.* at 40-41.

Dr. Atkinson has been licensed to practice medicine in Georgia since 2000. *Id.* at 6. He is certified in anatomic, clinical, and forensic pathology by the American Board of Pathology. *Id.* at 7. He has performed approximately six hundred autopsies during his career, with approximately fifty autopsies on victims of motor vehicle collisions. *Id.* at 9-11. As a forensic pathologist, Dr. Atkinson is trained to recognize injuries, including neurological injuries that a person may sustain in an accident. His medical expertise permits him to opine on whether such injuries would preclude an individual's consciousness or ability to move voluntarily. Contrary to Defendants' arguments, Dr. Atkinson never opined that Jack Holton was actually

3

conscious or aware of the accident. He instead only suggested that Jack Holton could have lived for a short period of time after the accident and that there were no injuries that would prevent consciousness or voluntary movement. The Court thus finds that Dr. Atkinson is qualified by his education and experience to opine on any neurological injuries sustained by Jack Holton and whether such injuries would have precluded his consciousness or voluntary movement.

Moreover, even if Dr. Atkinson's opinion is not neatly within the confines of pathology, the Court does not find it so off base that it should be excluded when considering Defendants' motion for summary judgment. *Compare Carroll v. Morgan*, 17 F.3d 787 (5th Cir. 1994) (holding trial court did not abuse discretion in allowing expert cardiologist to give opinion on relationship between patient's heart problems and his death), *and Connelly v. County of Bradford*, 2003 WL 25683923, at *3 (M.D. Pa. 2003) (reasoning that forensic pathologist was qualified by education and experience to testify on length of time that decedent bled prior to death), *with Neal-Lomax v. Las Vegas Metro. Police Dept.* 574 F. Supp. 2d 1193 (D. Nev. 2008) (reasoning that board certified pathologist not qualified to render opinion on whether stun gun was contributing factor in arrestee's death following struggle).

Defendants also make an alternative -- and somewhat cursory -- argument that Dr. Atkinson's opinions are "unreliable, as they are not grounded on any scientific testing or methodology that has been published, peer reviewed, or become generally accepted. Moreover, they are equivocal and speculative in nature, such that they would not support a jury finding." Doc. ## 37 at 1-2; 38 at 12-13. The Court disagrees. Dr. Atkinson himself performed the autopsies on the Holtons, and he thoroughly documented his observations and conclusions in the GBI autopsy reports. His findings were later reviewed by the Chief Medical Examiner for the State of Georgia, who concurred with Dr. Atkinson's autopsy reports. Doc. # 52 at 21-22. There is nothing to otherwise suggest that Dr. Atkinson's findings are unreliable under *Daubert*. Defendants' motion *in limine* should therefore be denied.[4]

## IV. SUMMARY JUDGMENT

Defendants move the Court for summary judgment with respect to Plaintiff Melissa Byrd's claims on behalf of her parents' estates for their conscious pain and suffering. Doc. # 36 at 1. Defendants argue that Plaintiff has

---

[4] Defendants, via footnote, separately urge that Dr. Atkinson's testimony be excluded procedurally because of Plaintiff's failure to designate him as an expert (and produce an expert witness report) pursuant to F.R.Civ.P. 26. Doc. ## 81 at 10, n.1; 64 at 3, n.2. Rule 26(a)(1)(A)(i) requires that the identity "of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses" be provided to the other party. Rule 26(a)(2)(A) further requires litigants to "disclose to the other parties the identity of any witness it may use at trial to present evidence under F.R.Evid. 702." Failure to do so may result in the Court prohibiting the disclosing party from presenting the witness at trial, unless the failure "was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). In determining whether the failure is harmless, the Court should consider: (1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party in allowing the witness to testify. *Cooley v. Great S. Wood Preserving*, 183 Fed. Appx. 149, 141 (11th Cir. 2005) (quotations and citation omitted). The three factors appear to weigh in Plaintiff's favor. First, Dr. Atkinson's testimony is critical to Plaintiff's case since its exclusion would summarily end the claim for her father's conscious pain and suffering. Second, Plaintiff was unaware of Dr. Atkinson's involvement in the autopsies of the Holtons at the time Rule 26(a)(1) disclosures were served. Doc. # 73 at 2. Third (and most significantly), Defendants are not prejudiced by allowing Dr. Atkinson's testimony. Dr. Atkinson was identified as a witness early in the litigation process, and Defendants have already deposed him. Prohibiting Dr. Atkinson's testimony by reason of Rule 26 would thus be improper.

"no reliable, admissible evidence sufficient to prove to a probability the essential elements of her claims." *Id.* Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence on which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Georgia law generally permits recovery for a decedent's pain and suffering. *See* O.C.G.A. § 9-2-41 (governing the survival of tort actions). However, where "medical evidence is that death was instantaneous, and there is no evidence the decedent exhibited consciousness of pain, recovery for the decedent's pain and suffering is not permitted." *Grant v. Georgia Pacific Corp.* 239 Ga. App. 748, 751 (1999); *see also Woodard v. Ford Motor Co.*, 2007 WL 4125519, at *3 (N.D. Ga. 2007) (Summary judgment for pain and suffering not appropriate where the medical examiner found death was only "*almost* instantaneous," and paramedics took a relatively long time (five minutes) to arrive at the scene.) (emphasis added).

Here, Plaintiff has presented sufficient evidence that Jack Holton's death was not instantaneous and that he in fact may have survived for a short period of time. *See* doc. ## 46 at 31-32 (medical evidence that Jack Holton could have survived injuries sustained in accident); 50 at 7 (paramedic felt faint pulse upon arrival at scene of accident). Moreover, there is sufficient evidence that Jack Holton may have experienced conscious pain and suffering prior to his death. *See supra* section III (medical evidence that injuries sustained by Jack Holton did not necessarily preclude consciousness or voluntary movement); doc. # 50 at 10 (paramedic's observation of Jack Holton appearing to embrace his wife's body). Summary judgment should therefore be denied as reasonable jurors could conclude that Jack Holton indeed endured conscious pain and suffering prior to his death.

Summary judgment, however, is appropriate as to all other claims for conscious pain and suffering, including that endured by Grace Holton post-impact and pre-death, as well as any pain and suffering experienced by both of the Holtons caused by pre-impact fright or shock. First, unlike with Jack Holton, medical evidence showed that Grace Holton's death was virtually instantaneous, doc. # 46 at 24, and Plaintiff has presented no evidence that Grace Holton experienced pain and suffering after the collision. Second, Plaintiff has presented no evidence that the Holtons were aware of the impending collision with the Wal-Mart tractor-trailer.[5] Georgia law requires some evidence that the decedents actually anticipated the collision before a recovery for pre-impact pain and suffering is allowed. *See Crockett v. Norfolk Southern Ry. Co.*, 95 F. Supp. 2d 1353, 1366 (N.D. Ga. 2000) ("If the skid marks were not made by Crockett's vehicle, there is no evidence he was aware of the impending collision or that he could have experienced fright or mental suffering."); *Beam v. Kingsley*, 255 Ga. App. 715, 716 (2002)

---

[5] The evidence in fact suggests that the Holtons were entirely unaware of the impending impact. *See* doc. ## 46 at 22-23 (dicing injuries from safety glass on Grace Holton's left cheek and neck indicate that she was looking straight ahead and never turned her head toward the oncoming vehicle); 61 at 31 (eyewitness observation that Holtons' vehicle did not veer or turn before impact).

5

("[E]vidence showed that Kingsley was aware of the impending collision and swerved to avoid it."); *Monk v. Dial,* 212 Ga. App. 362 (1994) (Evidence that decedent's vehicle veered shortly before collision allowed jury to infer that decedent was aware of impending crash.).

V. **CONCLUSION**

For the foregoing reasons, Defendants' motion *in limine* is ***DENIED***, doc. # 37, while Defendants' motion for summary judgment is ***GRANTED*** in part and ***DENIED*** in part, doc. # 36. The motion is ***GRANTED*** as it relates to any pre-impact pain and suffering experienced by the Holtons, and as it relates to conscious pain and suffering endured by Grace Holton post-impact and pre-death. The motion is ***DENIED***, however, as it relates to conscious pain and suffering endured by Jack Holton post-impact and pre-death.

This day of 22 October 2009

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA